Filed 9/25/20  P. v. Servin CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B301690 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA190204) |
| v. | |
| JOSE DANIEL SERVIN | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 2000, a jury convicted defendant Jose Daniel Servin of murder, robbery, and carjacking and found true the special circumstance allegations that the murder was committed during the commission of a robbery and carjacking. The trial court sentenced Servin to state prison for a term of life without the possibility of parole plus one year.

In 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e).)

Senate Bill No. 1437 also enacted section 1170.95, which permitted persons who could no longer be guilty of murder under the new law to petition the trial court for resentencing. (§ 1170.95, subd. (a).)

Servin appeals from the trial court's summary denial of his Penal Code section 1170.95 petition.[1] The trial court determined that Servin could not demonstrate he was eligible for section 1170.95 relief because a jury found true special circumstance allegations that the murder was committed during the commission of a robbery and carjacking, which necessarily would have required the jury to find either that Servin was the actual killer; with the intent to kill, aided and abetted in a murder of the first degree; or was a major participant in the underlying crimes who acted with reckless indifference to human life. (See

_____

[1] All unspecified statutory references are to the Penal Code.

§ 190.2, subds. (b)-(d).)  On appeal, Servin argues the trial court improperly relied upon the jury's special circumstance findings made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified under what circumstances a defendant could be found to be a major participant who acted with reckless indifference to human life.  Consistent with this court's recent opinion in *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), we conclude that because Servin could still be convicted of murder under the new felony-murder rule, he is ineligible for section 1170.95 relief as a matter of law.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.    Servin Is Convicted of Felony Murder and the Judgment Is Affirmed on Direct Appeal**

We grant Servin's request to take judicial notice of our prior, unpublished opinion relating to his direct appeal, *People v. Servin* (Sept. 27, 2001, B147960) (*Servin*).  (Evid. Code, § 452, subd. (d).)  We quote the facts stated therein:  "On the afternoon of August 20, 1996, Sergio Alvarado (Alvarado) saw a green car pull into the driveway of the house next door to his residence on Miramonte Street.  The car had stock wheels.  The green car later left, driving towards the intersection of Miramonte and Gage Streets.  When the green car stopped at the intersection, a white Astro van pulled up along the driver's side of the car which, at that point, was hemmed in.  A Hispanic man with a shaven head got out of the van.  He ordered the driver of the green car, later identified as Denley Wilson (Wilson), out of the car.  Wilson got out of the car, waving his hands and yelling, 'Please, don't. Don't.'  Another Hispanic man with a shaven head got out of the

3

van.  Alvarado then heard a 'bang,' after which Wilson fell to the ground.  The second Hispanic man made some movement as if kicking Wilson, then got into the green car and drove away.  The van followed the green car.  The shooter had large letters tattooed on the back of his head.

"Alvarado went to assist Wilson, while he had a friend call 911.  Wilson died as Alvarado held his hand.

"At approximately 1:30 p.m. on August 20, 1996, Los Angeles County Sheriff's Deputies James Grubb and Ron Miranda went to the intersection of Miramonte and Gage Streets.  They found a man lying dead in the street.  He had a bullet hole in his chest.  Once paramedics removed the victim, a bloodstain marked where he had fallen.  The deputies found a bullet in the street.

"Detective Augustin Ortiz was assigned to investigate the homicide.  After having photographs taken of the bloodstain on the street and the expended bullet found nearby, Detective Ortiz attempted to find the vehicles involved.  Approximately one hour later, he learned that Wilson's car was several blocks from the site at which he died.  The radio was missing.  The car's stock wheels had been removed and replaced with mismatched wheels.  The car was a rental, which had been rented to someone other than Wilson.  Detective Ortiz was unable to locate the person who had rented the car or to ascertain how Wilson came to possess it.

"Darnell Carter, a forensic identification specialist, lifted fingerprints from the inside and the outside of the car that same day.  Criminalist Dale Higashi examined the bullet the deputies had recovered.  He determined it likely had been fired from a .44 caliber Smith and Wesson revolver.

4

"Years later, Detective Ortiz received information that a particular white Astro van might have been linked to the homicide. When the homicide occurred in 1996, Jose Luis Ortega, also known as 'Chili,' was the registered owner of the van. Detective Ortiz learned that 'Chili' had a large block-letter tattoo on the back of his head, which read, 'LA.' By the time Detective Ortiz tracked down the van in 1999, it had changed hands several times. The current owner gave permission for the examination and photographing of the van.

"At approximately the same time, Detective Ortiz received information that [Servin] might have been involved in the homicide. Detective Ortiz obtained a booking print of [Servin] and sent it to the laboratory for comparison with fingerprints lifted from Wilson's car. One fingerprint, found on an outside window of the car, matched [Servin's] booking print.

"[Servin] was arrested in July 1999. After [he] waived his constitutional rights, Detectives Ortiz and Corina interviewed him. [Servin] acknowledged that he was 'involved in s murder case,' but protested that he 'didn't pull no trigger.' On August 20, 1996, 'Chili' and 'Tricky' came over to [Servin's] house. [Servin] needed money. After seeing Wilson come out of a house where drugs are sold, the three of them 'decided to jack' Wilson. [Servin] drove 'Chili's' white van. All of them were armed. 'Chili' had a .38, .44 or .45 caliber black revolver. 'Tricky' had a 9-millimeter handgun and [Servin] had a .380. All of them had shaven heads and tattoos. They were all wearing white tank tops. The group intended to get money and drugs from Wilson. They did not intend to take the car, 'just, you know, like get out in the trunk right there.'

"When Wilson drove away from the house in a green car, [Servin] followed him to a traffic signal, where he pulled up alongside the car. 'Tricky' and 'Chili' were in the back seat. 'Tricky' got out of the van through the sliding door and forced Wilson out of his car. The car rolled, crashing into the car in front of it. 'Chili' then got out of the van. He told Wilson to get away from the car. Wilson 'started acting crazy.' He said, 'here, take it,' or 'don't take it." He was arguing with 'Chili,' who shot him. 'Chili' then got into the green car and drove away. After [Servin] heard the shot, 'Tricky' got back into the van. [Servin] followed the green car.

"The green car and the van stopped at a train track near the intersection of Slauson Boulevard and Holmes Street. They stopped to search the car, thinking, 'we were gonna have a lot of drugs in the trunk or something.' [Servin] told 'Chili,' 'You didn't have to shoot him "cause he was already out of the car." The car's trunk was empty. [Servin] checked under the seats and dashboard but found nothing.

"The trio left the car. They did not do anything to the tires or the radio. They went to Mexico for five days. While in Mexico, [Servin] sold his gun.

"[Servin] identified photographs of the van, 'Chili' and 'Tricky,' whose given name is Faustino Corona. The authorities located 'Chili' in Wyoming. He was returned to California, where he was charged separately. In Detective Ortiz's experience, 'jacking' is street slang for carjacking." (*Servin, supra*, B147960.)

A jury convicted Servin of first degree murder (§ 187, subd. (a)), robbery (§ 211), and carjacking (§ 215, subd. (a)) and found true the special circumstance allegations that the murder was committed during the commission of a robbery and

carjacking. The trial court sentenced Servin to state prison for a term of life without the possibility of parole plus one year and imposed restitution and parole revocation fines upon him.

On direct appeal, Servin argued that the parole revocation fine must be stricken and that there was insufficient evidence that he aided and abetted a carjacking, either as a substantive offense or as a felony-murder special circumstance. This court modified the judgment to strike the parole revocation fine, but otherwise affirmed the judgment. (*Servin, supra*, B147960.)

As to the felony-murder special circumstance finding, this court determined that at trial, the prosecution had to prove that Servin, "an aider and abettor who was not the actual killer, but was a major participant in the crime, acted with reckless indifference to human life. . . . [Servin] wisely does not dispute the sufficiency of the evidence to prove this element of the special circumstance finding. [¶] [Servin] agreed to drive while his companions searched for a robbery victim. He was armed and knew his companions were armed. When they settled upon Wilson as a victim, [Servin] maneuvered the van next to Wilson's stopped and hemmed-in car. This allowed 'Tricky' to force Wilson from his car and 'Chili' to shoot Wilson so he could take the car. [Servin] clearly realized that such a shooting could occur, for he complained to 'Chili' after the fact that it was not necessary to kill Wilson, as Wilson already was out of the car. The foregoing constitutes substantial evidence that [Servin] had a 'subjective awareness of the grave risk to human life created by [his] participation in the [carjacking and robbery].' (*People v. Estrada*[ (1995)] 11 Cal.4th [568,] 578.)" (*Servin, supra*, B147960.)

7

**B.      Servin Petitions the Trial Court for Resentencing Relief Pursuant to Section 1170.95**

Servin filed a section 1170.95 petition for resentencing relief on January 31, 2019, using a check-the-box form, and filed a duplicate petition on February 8, 2019.  The prosecution filed an opposition.  At a hearing on July 22, 2019, the trial court stated it intended to deny the petition based on the jury's special circumstance findings.  Servin's attorney requested, and was granted, an opportunity to file a reply brief.

In his reply brief, Servin argued, among other things, that under *Banks* and *Clark*, the jury could not now find true the special circumstance allegations.  Additionally, he explained that at trial, he had proposed jury instructions relating to the special circumstance that the trial court rejected; the jury asked "several clarifying questions" concerning the special circumstance; and that one juror felt the special circumstance jury instructions were not clear.

During the September 30, 2019 hearing on Servin's section 1170.95 petitions, the trial court stated that it had concerns relating to the constitutionality of section 1170.95, but denied Servin's petitions on the basis that he failed to make a prima facie showing that he was entitled to relief.  The trial court stated it had reviewed the briefs, the jury instructions, verdict forms, and our opinion relating to the direct appeal.  After arguments of counsel, the trial court found that the record contradicted Servin's allegations that he was not a major participant who acted with reckless indifference to human life.  Accordingly, the trial court concluded an order to show cause was not necessary and denied Servin's petitions.

Servin timely appealed the September 30, 2019 order.

## DISCUSSION

Under section 1170.95, subdivision (a), a person convicted of felony murder may petition the trial court for resentencing "when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) *The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.*"  (Italics added.)

If a petitioner demonstrates a prima facie case for relief, the trial court must issue an order to show cause why resentencing relief should not be granted.  (§ 1170.95, subd. (c).)  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ."  (§ 1170.95, subd. (d)(3).)

Servin argues he was denied his statutory right to an evidentiary hearing at which the prosecution had the burden to prove the special circumstance beyond a reasonable doubt.  Citing *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, and *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835, Servin argues that pre-*Banks/Clark* special circumstance findings are not sufficient to preclude resentencing relief under section 1170.95.

However, we disagree with *Torres*'s construction of section 1170.95 in this regard.  (See *Galvan, supra,* 52 Cal.App.5th 1134.)  As we recently held in *Galvan,* "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95."  (*Id.* at p. 1137; *People v. Gomez* (2020) 52 Cal.App.5th 1, 17.)[2]

Servin cannot make the required showing under section 1170.95, subdivision (a)(3) that he now *could not* be convicted of first or second degree murder because of the changes to section 188 or 189.  A defendant may still be convicted of felony murder under amended section 189, subdivision (e) if "(1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) *The person was a major participant in the underlying felony and acted with reckless indifference to human life*, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e), italics added.)

Thus, Servin's petition does not depend on Senate Bill No. 1437's changes to the felony-murder rule.  Rather, as in *Galvan,* his petition depends on "the clarification of the requirements for the special circumstance finding in *Banks* and *Clark.*"  (*Galvan, supra,* 52 Cal.App.5th at p. 1142.)  Because the proper vehicle for such a challenge is a petition for writ of habeas

---

[2] Servin has brought to our attention Division Five's recent opinion, *People v. York* (Sept. 3, 2020, B298635) ___ Cal.App.5th ___ [2020 WL 5249362].  We decline to depart from our holding in *Galvan.*

corpus, the trial court did not err in summarily denying Servin's petition.[3]  (See *id.* at pp. 1137, 1142.)

In his reply brief, Servin argues the Legislature intended *Banks* challenges to be incorporated into the section 1170.95 proceedings and urges us to depart from our holding in *Galvan*. We are not persuaded.  As we describe in *Galvan*, excluding *Banks* challenges from section 1170.95 proceedings is not inconsistent with the plain language and purpose of the statute. (See *Galvan, supra,* 52 Cal.App.5th at p. 1143.)  Moreover, permitting a defendant to test a *Banks* special circumstance finding as part of a section 1170.95 petition would give a section 1170.95 petitioner "an enormous advantage over other similarly situated defendants based solely on the date of his conviction" because the People would have to prove the special circumstance beyond a reasonable doubt.  (*Id.* at p. 1142.)  However, "[d]efendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding."  (*Id.* at pp. 1142-1143.)  "[N]othing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants."  (*Id.* at p. 1143.)

---

[3] In support of his argument that the evidence at his trial was insufficient to support a special circumstance finding after *Banks*, Servin analogizes the facts of his case to those stated in *In re Ramirez* (2019) 32 Cal.App.5th 384.  In his reply brief, Servin acknowledges *In re Ramirez* was an appeal from a petition for writ of habeas corpus.  (*Id.* at pp. 407-408.)

Servin next argues that if we do not depart from our holding in *Galvan*, that we should remand the matter to the trial court with instructions that the trial court treat Servin's section 1170.95 petition as a petition for writ of habeas corpus. A petition for writ of habeas corpus and a section 1170.95 petition require a petitioner to follow different procedures, make different substantive allegations, and imposes different standards on when counsel should be appointed for a petitioner. (See, e.g., §§ 1170.95, 1474; Cal. Rules of Court, rule 4.551.) Accordingly, we will not remand with instructions that the trial court deem the section 1170.95 petition one for writ of habeas corpus.

## DISPOSITION

The September 30, 2019 order denying Servin's petition is affirmed.

NOT TO BE PUBLISHED

SINANIAN, J.*

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.